Plaintiff claims that he hurt his back on May 20, 1941, while working for the defendant company and brought this suit against his employer and its insurance carrier for compensation for total and permanent disability. He prays for compensation in the sum of $8,000 payable at the rate of $20 per week for a period not exceeding 400 weeks, plus the sum of $250 for medical expenses. The trial judge rendered judgment in favor of plaintiff for the amount prayed for except the medical expenses, and the defendants have appealed. As no answer has been filed to the appeal, the item of $250 for medical expenses is not before us on the appeal.
The defense is of a two-fold nature, i.e., that there was no accident and plaintiff suffers no disability. There is no question but that plaintiff is entitled to recover the maximum weekly compensation if he is entitled to recover any compensation.
Plaintiff himself was the only witness to the accident, and the way he describes his injury in his testimony is that he was "wrecking a form off a concrete wall with a wrecking bar and I had all my weight against the wrecking bar and the form broke loose from the concrete wall unexpectedly and I fell backwards into what was called a whaler, against or next the concrete wall, and broke a 2x4 turned up edgeways; falling with my full weight and all my force against that. Hit me in the lower part of my back."
He testified that this was in mid-afternoon; that the foreman came by and he told him what he had done, and the foreman told him to sit down the rest of the afternoon; he did not think he was hurt much and went back to work the next morning and worked for two or three days, but his back continued to hurt him, and he went to see Dr. Attaway at Ville Platte who gave him some medicine; he went back to work and worked for several days, but his back continued to hurt him, and he went to see his family doctor, Dr. Long, in Hemphill, Texas; he did not go to the company hospital because he did not want to get laid off; Dr. Long advised him to go to the company hospital which he did, and was treated there by Dr. Dew who put him under a light treatment and taped his back and advised him to lay off and rest; he continued to have pain in his back and could not do the kind of work he was doing before his injury; he had never had any trouble with his back before the injury, but had pain in his back ever since the injury, losing weight from 185 pounds to 156 pounds; he has to take drugs to ease his pain so he can sleep, and wears a belt part of the time to support his back.
In view of the fact that the happening of the accident depends on the statement of the plaintiff himself, the defendants have taken advantage of two or three circumstances and apparent inconsistencies in plaintiff's statements and conduct to cast some doubt on his testimony and thus leave the proof of the happening of the accident too uncertain to form the basis of a judgment for compensation.
Plaintiff admits that he worked several days after he claims to have hurt his back on May 20th and that he did not report the accident to the company doctor until some two weeks later, during which time he had seen Dr. Attaway at Ville Platte, as well as his own family doctor in Texas, the latter advising him to go to the company hospital for treatment, which he did on June 3rd. He explains this by saying that he did not think he was hurt very much and thought his back would get alright in a few days; that he did not want to be laid off. This is a very reasonable explanation, particularly in view of the fact that he was making $10 per day as a carpenter.
Dr. Dew, the company doctor, testified that when plaintiff came to see him on June 3rd, some two weeks after the alleged accident, he told this doctor that he had been having pain in his back at irregular intervals for the past two weeks; that on being asked if he had received an injury on the job, plaintiff stated that he could not recall any. However, on a later visit the *Page 315 
doctor testified that on bringing up the question of the accident again, plaintiff stated that some straining or prizing work he had been doing with a crowbar might have caused his backache.
On June 18th, about a month after the accident, plaintiff gave a statement to the insurance adjuster in which he gave an account of the injury to his back practically the same as that given by him on the witness stand. And on June 27th, just a little more than a month after the accident, plaintiff was examined for the company by Dr. Hardy who testified that plaintiff stated that about five weeks prior to that time (which would be about the time of the accident) he was wrecking a form with a pinch bar when he fell backward and struck his lower spine against concrete wall. The history of his injury as he gave it to Dr. Cox on July 10th when he was examined by this doctor for the company is not greatly at variance with the account given the insurance adjuster and Dr. Hardy. It is reasonable to believe that the insurance adjuster would be likely to make a more accurate record of what plaintiff stated as to the manner in which he was injured than the doctors who were primarily interested in the nature and extent of his injury rather than the manner in which it occurred. Moreover, we cannot disregard the statement of the trial judge that: "Under the facts in this case you must accept or reject the testimony of the plaintiff as to whether he actually hurt himself as stated by him. I observed the plaintiff in his movements and as a witness, and when he had completed his testimony, I was impressed that he was telling the truth." We certainly see no reason to disagree with the trial judge on his finding on this point.
Plaintiff went to see Dr. Long, his family physician, in Hemphill, Texas, some two weeks after the accident and gave this doctor a history of having hurt his back a few days before. This doctor examined the lower part of plaintiff's back and he found signs of bruises and discolorations across the lower part of his back, mostly on the left side; rigidity of the muscles at each side of the spine and tenderness over the sacro-iliac joint, with complaint of pain on forced motion in his lower back. This doctor expressed the opinion that plaintiff has a stretching of the ligaments between the sacro-iliac joint, and that he is totally and permanently disabled from doing hard manual labor. The doctor saw plaintiff several times, and was of the opinion that the condition of his back resulted from trauma.
Dr. McGrath of Jasper, Texas, testified that he first saw plaintiff in the middle of July, 1941, and saw him on several occasions thereafter. This doctor found about the same condition of plaintiff's back as did Dr. Long. He also expressed the opinion that the ligaments connecting the sacro-iliac joint were torn, and it was his opinion that the pain and tenderness in the lower part of plaintiff's back resulted from trauma. Plaintiff has flat feet and is bow-legged, but this doctor did not think the pain in his back could be caused from the condition. The treatment this doctor prescribed was for plaintiff to refrain from hard work and wear a brace to support his back.
In addition to the treatment of plaintiff by Dr. Dew for two or three weeks, he was examined one time by Doctors Hardy, Fraser and Cox, the substance of their testimony being that they could find no organic condition which would render plaintiff disabled nor account for the pain and limitation of motion in his back. They said the pain and tenderness which plaintiff claimed to have in the lower part of his back were purely subjective symptoms and they could find no fracture or injuries to account for this condition. Some of these doctors expressed the opinion that the pain could be caused by plaintiff's flat-feet and bow-legs. These doctors saw no reason why plaintiff could not do carpenter work.
While the evidence shows that plaintiff for the past two or three months ploughed some in a garden at his home for an hour or so at a time, yet it is clear that plaintiff is not in a condition to do the kind of work he was accustomed to do, unless we are to believe that he is faking. There would seem to be no reason for him to fake a disability in view of the large wages that he was receiving and no doubt could continue to receive under prevailing conditions.
The only serious question is whether or not he has proved with legal certainty that his present disability resulted from the strain or the injury which he sustained to his back. Considering the fact that he had no disability or pain in his back before the accident, and the fact that Doctor Long found bruises on the lower part of his back a few days after he was injured, and the further fact since the accident he has lost about thirty pounds in weight, we are *Page 316 
not in a position to say that the trial judge was in error in awarding him compensation.
The judgment awards plaintiff compensation for the flat sum of $8,000, payable in weekly installments of $20 for a period not exceeding 400 weeks. The judgment will be recast so as to conform to the statute.
For the reasons assigned, it is ordered that the judgment be revised and recast so as to award plaintiff compensation at the rate of $20 per week for a period not exceeding 400 weeks, payable weekly, beginning May 20, 1941, with legal interest on past due installments until paid, and as thus revised and recast, the judgment is affirmed at the cost of defendants in both courts.